UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL MARKSBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-2724-EFM |
| | ) |
| FCA US LLC, et. al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This case arises from plaintiff's purchase of a Dodge Ram pickup truck and defendants' later refusal to fix the truck under a warranty claim. Plaintiff asserts claims under the Kansas Consumer Protection Act ("KCPA") and the Magnuson-Moss Warranty Act, and for breach of implied warranty of merchantability, common law fraud, and injunctive relief. The case is now before the court on plaintiff's motion to compel defendant FCA US LLC ("FCA"), the truck's manufacturer, to fully respond to certain document requests and interrogatories (ECF No. 47). For the reasons discussed below, the motion is granted in part and denied in part.

In 2009, plaintiff purchased a model-year 2009 Dodge Ram 1500 pickup truck from defendant Landers McLarty Olathe KS, LLC ("Olathe Dodge"), a local FCA dealer. The truck came with a Lifetime Powertrain Limited Warranty ("Warranty") issued by FCA, which covered the costs of all parts and labor needed to repair powertrain components

defective in workmanship and materials. In May 2016, plaintiff brought his truck to Olathe Dodge for repair of the exhaust manifold. He paid $1,323 for the repair because defendants would not recognize it as covered by the Warranty. The Warranty had a requirement that coverage would continue only if the truck was subjected to a "powertrain inspection . . . within sixty (60) days of each 5 year anniversary of the in-service date," and plaintiff does not dispute that a powertrain inspection was not timely performed.[1] Plaintiff alleges instead that FCA concealed the powertrain-inspection requirement.

Plaintiff served document requests and interrogatories on FCA. FCA timely served its responses and objections. The parties then engaged in multiple meet-and-confer discussions, and FCA supplemented its responses on August 13, 2020. In a telephone call between counsel on August 20, 2020, the parties resolved additional issues. Plaintiff's counsel "recapped" those resolutions in an e-mail sent later that day to FCA's counsel.[2] The e-mail reflects plaintiff requested written confirmation of certain facts to resolve disputes related to Document Request Nos. 2-4, 8, 11, and 18; and Interrogatory Nos. 5 and 8.[3] Plaintiff also requested supplemental answers to Document Request Nos. 16 and 19-22; and Interrogatory No. 1.[4]

---

[1] ECF No. 48 at 2; *see also* ECF No. 47 at 4.

[2] ECF No. 47-5 at 3.

[3] *Id.*

[4] *Id.*

On August 24, 2020, FCA's counsel responded to the e-mail, providing the written confirmations requested for Document Request Nos. 2-4, 8, 11, and 18; and Interrogatory Nos. 5 and 8; and stating FCA would serve the requested supplemental answers on August 26, 2020.[5] Plaintiff's counsel responded by e-mail a few hours later, acknowledging the confirmations and asking FCA to consent to a one-week extension of that day's deadline for filing a motion to compel discovery.[6] When FCA's counsel questioned the need for the extension, plaintiff's counsel noted that plaintiff's ability to file a motion to compel would help ensure FCA produced the supplemental answers, and further noted for the first time that FCA had "some questions and concerns" regarding certain documents produced on August 13, 2020.[7] When FCA refused consent, plaintiff filed the instant motion to compel on August 24, 2020.

FCA served the promised supplemental answers to Document Request Nos. 16 and 19-22, and Interrogatory No. 1, as well as a verification page for its earlier supplemental responses, on August 26, 2020.[8] In its September 4, 2020 response to the motion to compel, FCA argues the motion only raises issues that either have been resolved or that were never

---

[5] *Id.* at 2.

[6] *Id.*

[7] *Id.* at 1.

[8] *See* ECF No. 49; ECF No. 50-1 at 2-3.

raised during the meet-and-confer process.[9]  FCA seeks its fees and costs incurred in responding to what it views as an "unnecessary and completely unjustified" motion.[10]

As discussed further below, the court agrees with FCA that the motion to compel was largely—though not completely—unnecessary.  The court addresses each request to compel (or strike) in turn.

Preliminary Statement and General Objections.  Both FCA's response to interrogatories[11] and response to document requests[12] included introductory sections titled "Preliminary Statement" and "Objections to Definitions and Instructions."  Plaintiff complains that such "boilerplate responses" are not sufficient to preserve objections and should be struck.[13]  Plaintiff is correct, as a technical matter, that "initial general, boilerplate objections are tantamount to not making an objection at all,"[14] but as a practical matter, this appears to be much ado about nothing.  Significantly, as plaintiff himself recognizes, FCA has not withheld any discovery based on the introductory sections of its responses.  Thus, the court questions why plaintiff is asking both the court and FCA to spend time addressing this inconsequential argument.

---

[9] ECF No. 50 at 1.

[10] *Id.* at 11.

[11] ECF No. 47-2.

[12] ECF No. 47-1.

[13] ECF No. 47 at 5.

[14] *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2020 WL 374685, at *4 (D. Kan. Jan. 23, 2020).

To the extent plaintiff complains about FCA's statement that its responses are made "subject to" objections that may be raised as to *admissibility* should plaintiff seek to use the responses in court, the court finds no asserted conditional objection to *discovery*.

Plaintiff's complaint about FCA's objection to temporal scope is further without merit. Plaintiff's requests sought discovery from October 31, 2007, to the present.[15] FCA objected "because FCA US did not exist prior to 2009," but stated it would provide responsive information in its possession, custody, and control.[16] In meet-and-confer e-mail exchanges, FCA again made clear it was not withholding any information or documents based on temporal scope.[17] Because FCA has asserted it produced responsive documents, plaintiff's motion to compel is denied in this respect.[18]

Plaintiff's request for relief related to FCA's preliminary statements and general objections is denied.

Document Request Nos. 2, 3, 8, and 11. Plaintiff next asks the court to strike or overrule FCA's objections to Document Request Nos. 2, 3, 8, and 11. As discussed above, the record reflects that during the parties' meet-and-confer sessions, plaintiff agreed that

---

[15] ECF No. 47-2 at 2, ECF No. 47-1 at 2.

[16] ECF No. 47-2 at 3, ECF No. 47-1 at 3.

[17] ECF No. 47-4 at 1.

[18] *Azim v. Tortoise Capital Advisors, LLC*, No. 13-2267-DDC, 2015 WL 13624448, at *4 (D. Kan. May 26, 2015) ("Defendants also claim that there are no additional responsive documents to produce. Because defendants have asserted that they have produced the documents relevant to Request No. 16, plaintiff's motion to compel is denied.").

5

he would accept FCA's answers to these requests provided FCA gave "written confirmation" that "nothing is being withheld on the basis of the objections."[19] FCA provided such written confirmation on August 24, 2020, stating, "This will confirm that for Request for Production Nos. 2, 3, 8 and 11, FCA US is not withholding documents on the basis of its objections."[20] Plaintiff now seems to be seeking "formal supplements" to the same effect, despite counsel's agreement that e-mail confirmation would be sufficient.[21] The court finds this unnecessary. The purpose of the meet-and-confer process is for the parties to resolve discovery disputes without court intervention. It is a waste of the court's time to review a dispute that has been resolved. Nor will the court indulge plaintiff's word games that also would serve to undermine the meet-and-confer process.[22]

To the extent plaintiff vaguely suggests FCA has withheld responsive documents,[23] which FCA denies, "the court is left with a 'he-said/she-said' dispute."[24] In this situation, the party seeking production bears the burden of presenting "evidence to support their assertion that responsive documents exist, and of course as a practical matter the court

---

[19] ECF No. 47-5 at 3.

[20] *Id.* at 2.

[21] ECF No. 47 at 8.

[22] *See* ECF No. 53 at 4 ("Importantly, at no point did Plaintiff ever say *no* formal supplements would *ever* be necessary.") (emphasis in original).

[23] *See, e.g., id.* at 8-9; ECF No. 53 at 1.

[24] *Green v. Harbor Freight Tools USA, Inc.,* No. 09-2380-JAR, 2011 WL 13086613, at *5 (D. Kan. Aug. 24, 2011).

cannot compel the production of documents that do not exist."[25] Plaintiff only attempts to meet this evidentiary burden with respect to Document Request No. 3, which asked for documents evidencing FCA's mailing "(including the when, how, and by whom of the mailing)" of "reminders, notices, disclosures, and other communications . . . pertaining to [the Warranty] and/or any period inspection requirement."[26] Plaintiff notes that FCA produced reminder letters discussing the Warranty,[27] but no evidence of the *mailing* of these letters. Although the reminder letters are not direct evidence FCA is withholding documents responsive to Document Request No. 3, the court finds them sufficient to warrant further explanation by FCA. Thus, by **October 1, 2020**, FCA is ordered to either produce documents responsive to Document Request No. 3 regarding mailing, or serve a signed supplement averring under oath that no such documents exist.

Plaintiff's request for relief with respect to Document Request Nos. 2, 8, and 11 is denied.

Document Request Nos. 16 and 19-22. In another request, plaintiff asks the court to strike or overrule FCA's objections to Document Request Nos. 16 and 19-22. As noted above, during the meet-and-confer process, the parties agreed to resolve their dispute over these requests by FCA serving formal, written supplements confirming it had not withheld

---

[25] *Id.*

[26] ECF No. 47-1 at 3-4.

[27] *See* ECF No. 47-8.

7

any documents based on its objections.  FCA served such supplements on August 26, 2020, noting that it did not limit its search for responsive documents based on its objections and did not locate responsive documents.[28]  Thus, as a practical matter, this dispute is moot.  The court declines to decide whether, as a matter of academic exercise, the objections asserted are valid.   Plaintiff's motion is denied in this respect.

Interrogatory Nos. 1 and 5.  Plaintiff next asks the court to compel FCA to supplement its responses (under oath) to Interrogatory Nos. 1 and 5.  FCA's responses to these interrogatories were discussed, as mentioned above, during the parties' meet-and-confer sessions.  The record reflects FCA's counsel orally answered plaintiff's questions about FCA's responses (specifically, whether the Warranty was offered on any model year vehicle after 2009 and whether certain ownership numbers FCA had provided excluded persons who no longer owned their vehicle), and agreed to formally supplement the responses.[29]   On August 24, 2020, FCA's counsel sent an e-mail stating FCA's supplemental answers,[30] but it does not appear FCA has yet served a formal supplement as

---

[28] ECF No. 50-2.  The court rejects plaintiff's unsupported suggestion that FCA had a duty to "say what that search entails."  ECF No. 53 at 5.

[29] ECF No. 47-5 at 3.

[30] Counsel's August 24, 2020 e-mail stated, "the individuals who make up the numbers listed in response to Interrogatory No. 5 have not settled their claims; the numbers listed in response to Interrogatory No. 5 exclude individuals who disposed of their vehicles within the first 5 years of ownership; and, the Lifetime Limited Powertrain Warranty did not apply to vehicles after the 2009 model year." *Id.* at 2.

agreed. FCA is therefore ordered to serve its supplemental answers to Interrogatory Nos. 1 and 5 by **October 1, 2020.**

<u>Interrogatory No. 9</u>. Interrogatory No. 9 asked FCA to "[i]dentify all third-parties, including consultants and marketing firms, who were used and/or consulted with respect to the Lifetime Powertrain Limited Warranty during the TIME PERIOD." FCA objected that it was "vague, disproportional to the needs of the case, and seeks information not relevant to any claim or defense in this case."[31] Plaintiff moves the court to overrule these objections and order FCA to produce responsive documents. This request is granted.[32]

First, the vagueness objection is overruled. It is not clear from FCA's interrogatory response, nor its response to the motion, what part of Interrogatory No. 9 it contends is vague. In any event, plaintiff clarifies in the motion briefing that the interrogatory seeks the identity of third parties consulted about the warranty or involved in the development and/or marketing of the Warranty after October 31, 2007. Given that the Warranty was only offered on model year 2009 vehicles, the court can't imagine this to be a large number.

Second, the interrogatory is relevant on its face. At the discovery stage, relevance is broadly construed.[33] "[A]ny matter that bears on, or that reasonably could lead to other

---

[31] *Id.*

[32] Although FCA complains plaintiff did not adequately confer about Interrogatory No. 9, which may be true, the court finds ordering further discussion on this issue futile at this point. For the sake of efficiency, the court will rule the objections now.

[33]*See Erickson, Kernell, Deruseau, & Kleypas v. Sprint Sols., Inc.*, No. 16-mc-212-JWL, 2016 WL 3685224, at *4 (D. Kan. July 12, 2016).

matter that could bear on, any issue that is or may be in the case" will be deemed relevant.[34]
The court agrees with plaintiff that third parties involved in marketing the Warranty could be sources from which plaintiff may seek information that bears on issues in this case. For example, a marketing agency could have information about whether and why/why not FCA including information about the inspection requirement in its advertisement of the Warranty.

Finally, FCA's proportionality requirement is flatly rejected. This was a boilerplate objection without any attempt to address the proportionality factors set out in Fed. R. Civ. P. 26(b)(1).

FCA is ordered to fully respond to Interrogatory No. 9 by **October 1, 2020.**

Readable Copy of Mailer. Plaintiff requests that the court order FCA to produce a "readable copy" of a single-page mailer that is an alleged example of an inspection reminder sent to plaintiff.[35] FCA has agreed to "conduct a search to see if a clearer copy exists," but there is no indication that FCA has fulfilled its agreement. Therefore, by

---

[34]*Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) and ruling the *Oppenheimer* standard still relevant after the 2015 Amendment to Rule 26(b)(1)). *See also Waters v. Union Pac. R. Co.*, No. 15-1287-EFM, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action.") (internal quotations and citation omitted).

[35] *See* ECF No. 47-9.

**October 1, 2020,** FCA is ordered to conduct a thorough search and either produce a more legible copy of the mailer or provide plaintiff a signed affidavit noting the detailed steps taken in the unsuccessful search.

<u>Interrogatory Verification Pages</u>.  Finally, plaintiff asks the court to compel FCA to produce verification pages for its interrogatory responses and supplemental interrogatory responses that are signed by an affiant with "personal knowledge" of the substance of the responses.  As FCA points out, however, when the responding party is a corporation, the agent answering interrogatories need *not* have personal knowledge of the responses.  Rather, Fed. R. Civ. P. 33(b)(1)(b) mandates that if the party to whom interrogatories are directed is a corporation, the "interrogatories must be answered by . . . any officer or agent who must furnish the information *available to the party*."[36]  "As a practical matter the rule . . . recognizes that a corporate or governmental party may lack personal knowledge of the responses, yet require[es] that someone must sign them upon his or her best knowledge and belief."[37] The person appointed to answer on behalf of a corporation "is not required to have personal knowledge of any or all of the information sought, and indeed cannot limit his answers to matters within his personal knowledge."[38]  Thus, the verification page must

---

[36] Emphasis added.

[37] *Harte v. Johnson Cty*., No. 13-2586-JWL, 2015 WL 3514657, at *2 (D. Kan. June 4, 2015).

[38] Steven S. Gensler & Lumen N. Mulligan, 1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY, Rule 33 Interrogatories (Feb. 2020 update) (citing *Shepherd v. Am. Broad. Co., Inc*., 62 F.3d 1469, 1482 (D.C. Cir. 1995); *Jiminez-Carillo v. Autopart Intern., Inc*., 285 F.R.D. 668, 669–70 (S.D. Fla. 2012); *Brown*

simply state the signatory attests that the information contained in the answers are true and correct to the best of the signatory's knowledge, based on both personal knowledge and information provided by others in the corporation.[39]  Plaintiff's motion to compel revised verification pages is overruled.

Attorneys Fees.  FCA requests an award of its fees and costs, noting Fed. R. Civ. P. 37(a)(5)(B) mandates an award of fees when a motion to compel is denied in full.  Here, of course, the motion was not denied in full.  The court declines to award either party its fees or costs arising from the above-discussed discovery disputes.

IT IS THEREFORE ORDERED that plaintiff's motion to compel (ECF No. 47) is granted in part and denied in part.  Where the court has ordered FCA to supplement its discovery answers, it must do so by **October 1, 2020**.

Dated September 23, 2020, at Kansas City, Kansas.

---

*v. White's Ferry, Inc.*, 280 F.R.D. 238, 243 (D. Md. 2012); *Abrams v. Ciba Specialty Chems. Corp.*, 265 F.R.D. 585, 587–88 (S.D. Ala. 2010); *Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*, 264 F.R.D. 233, 238 (W.D. N.C. 2010)).

[39] *Cruz v. Am. Nat'l Red Cross*, No. 19-1107-EFM, 2020 WL 416978, at *4 (Jan. 27, 2020). *Union Pac. R. Co. v. Grede Foundries, Inc.,* the case cited by plaintiff, is not to the contrary.  No. 07-1279-MLB, 2008 WL 4148591, at *10 (D. Kan. Sept. 3, 2008).  In *Grede*, the court simply stated the corporation's failure to provide any signature page was unacceptable.  *Id.*

  s/ James P. O'Hara  
James P. O'Hara  
U.S. Magistrate Judge

13