UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL MARKSBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 19-2724-EFM |
| | ) |
| FCA US LLC, et. al., | ) |
| | ) |
| Defendants. | ) |

**<u>ORDER</u>**

This case arises from plaintiff's purchase of a Dodge Ram pickup truck and
defendants' later refusal to fix the truck under a warranty claim.  Plaintiff asserts claims
under the Kansas Consumer Protection Act ("KCPA") and the Magnuson-Moss Warranty
Act, and for breach of implied warranty of merchantability, common law fraud, and
injunctive relief.  The case is now before the court on plaintiff's motion to compel
defendant FCA US LLC ("FCA"), the truck's manufacturer, to serve complete responses
to plaintiff's second set of interrogatories (ECF No. 75).  Because the court overrules
FCA's objections to the interrogatories, the motion is granted.

In 2009, plaintiff purchased a model-year 2009 Dodge Ram 1500 pickup truck from
defendant Landers McLarty Olathe KS, LLC ("Olathe Dodge"), a local FCA dealer.  The
truck came with a Lifetime Powertrain Limited Warranty ("Warranty") issued by FCA,
which covered the costs of all parts and labor needed to repair powertrain components

1

defective in workmanship and materials.  In May 2016, plaintiff brought his truck to Olathe

Dodge for repair of the exhaust manifold.  He paid $1,323 for the repair because defendants

would not recognize it as covered by the Warranty.  The Warranty had a requirement that

coverage would continue only if the truck was subjected to a "powertrain inspection . . .

within sixty (60) days of each 5 year anniversary of the in-service date," and plaintiff does

not dispute that a powertrain inspection was not timely performed.[1]  Plaintiff instead

alleges that FCA wrongfully concealed the powertrain-inspection requirement.  He brings

claims on behalf of a proposed class of "persons who purchased, in the state of Kansas, a

vehicle from [FCA] and were provided a Lifetime Powertrain Limited Warranty on or after

October 31, 2009."[2]

Plaintiff served interrogatories on FCA, which, according to plaintiff, are relevant

to show that FCA's concealment of the inspection requirement was willful.  FCA timely

served its responses and objections.  Plaintiff now asks the court to overrule objections to

Interrogatory Nos. 2-5, and to order complete answers.

INTERROGATORY NO. 2

Interrogatory No. 2 asked FCA to identify documents concerning the development

of the Warranty (including marketing metrics, meeting minutes, research, and profit/loss

---

[1] ECF No. 48 at 2; *see also* ECF No. 47 at 4.

[2] ECF No. 1-2 at ¶ 44.  Plaintiff's motion to certify the class is due June 11, 2021.
*See* ECF No. 78.

O:\ORDERS\19-2724-EFM-75.docx

reports)[3] that existed at one time, even though they were subsequently destroyed or not

retained.[4]  Plaintiff notes that in response to his earlier document requests, FCA represented

that its search did not turn up any such documents *currently existing* in FCA's possession,

so he focused Interrogatory No. 2 on the identification of documents that *at one time*

*existed*.[5]

FCA responded to Interrogatory No. 2 by referring plaintiff to its earlier document-

request responses (i.e., that it searched but "did not locate documents sought in those

requests") and then adding, "FCA US neither compiles nor maintains a record of

documents that have been discarded by its hundreds of business, engineering, and related

support departments pursuant to record retention policies or otherwise and is not aware of

any documents or information responsive to this interrogatory."[6]

Plaintiff takes issue with the fact that FCA's response does not indicate FCA has

searched for answers to Interrogatory No. 2.  In other words, although FCA may have

searched for currently existing documents responsive to document requests, it is unclear if

---

[3] These categories of documents were requested in plaintiff's first set of document requests, Nos. 16 and 19-22.

[4] For each identified document, FCA was asked to state when and why it was destroyed/not retained and whether it was covered by any "legal or tax holds." ECF No. 75-1 at 5.

[5] ECF No. 89 at 2.

[6] ECF No. 75-1 at 5.

O:\ORDERS\19-2724-EFM-75.docx

it looked into whether responsive documents existed at one time, as requested in the interrogatory.

Fed. R. Civ. P. 33(b)(1)(b) mandates that if the party to whom interrogatories are directed is a corporation, the "interrogatories must be answered by . . . any officer or agent who must furnish the information available to the party."  The person appointed to answer on behalf of a corporation "cannot limit his answers to matters within his personal knowledge."[7]  Rather, the appointee must consider the information "contained in [the corporation's] files and possessed by its own employees," as well as "information under its control."[8]  The appointee "should make use of books, records, other officers, or employees, as well as personal observation or recollection and any other reasonable source for gathering the requested information."[9]  "If the answering party lacks necessary

---

[7] Steven S. Gensler & Lumen N. Mulligan, 1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY, Rule 33 Interrogatories (Feb. 2020 update) (citing *Shepherd v. Am. Broad. Co.*, 62 F.3d 1469, 1482 (D.C. Cir. 1995); *Jiminez-Carillo v. Autopart Intern., Inc.*, 285 F.R.D. 668, 669–70 (S.D. Fla. 2012); *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 243 (D. Md. 2012); *Abrams v. Ciba Specialty Chems. Corp.*, 265 F.R.D. 585, 587–88 (S.D. Ala. 2010); *Nat'l Fire Ins. Co. of Hartford v. Jose Trucking Corp.*, 264 F.R.D. 233, 238 (W.D. N.C. 2010)).

[8] *Goodrich Corp. v. Emhart Indus., Inc.,* Nos. EDCV 04-00759-VAP, EDCV 03-00079-VAP, 2005 WL 6440828, at *3 (C.D. Cal. June 10, 2005).  *See also Grosek v. Panther Transp., Inc.,* 251 F.R.D. 162, 166 (M.D. Pa. 2008) (quoting *Brunswick Corp. v. Suzuki Motor Co.,* 96 F.R.D. 684, 686 (E.D. Wis. 1983) ("[Fed.] Rule [of Civ. Pro.] 33 requires that a corporation furnish such information as is available from the corporation itself or from sources under its control.").

[9] 35A C.J.S. Federal Civil Procedure § 700.

O:\ORDERS\19-2724-EFM-75.docx

information to make a full, fair and specific answer to an interrogatory, it should so state

under oath and should set forth in detail the efforts made to obtain the information."[10]

The court is not convinced that FCA has fulfilled its discovery obligations under

Rule 33 in answering Interrogatory No. 2.  FCA's response that it is "not aware" of

information responsive to this interrogatory is an unclear answer that does not indicate

whether or not such information exists in FCA's corporate knowledge.  Simply answering

"I don't know," gives no indication that FCA made any effort to find out; i.e., to gather the

information sought about destroyed or unretained documents.[11]  In response to the motion

to compel, FCA has not explained, for example, whether it attempted to identify and speak

with employees who were involved in the creation of the Warranty or who have knowledge

of decisions to not retain documents pertaining to the development of the Warranty.  Even

if FCA is correct that it does not need to set forth the details of searches for responsive

discovery, here, FCA has not represented that it conducted any "search" at all to find

responsive information about destroyed and unretained documents.

To the extent FCA "otherwise objects to Interrogatory No. 2 because it is overly

broad, unduly burdensome, disproportional to the needs of the case, and seeks information

---

[10] *Cont'l Ill. Nat. Bank & Tr. Co. of Chi. v. Caton*, 136 F.R.D. 682, 684 (D. Kan. 1991) (quoting *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 140 (W.D. Okla.1977)).

[11] As noted above, this category of documents is distinct from documents that could presently exist, for which FCA stated it "conducted a reasonable and diligent search."  ECF No. 75-1 at 5.  Thus, FCA's repeated assertion, *see* ECF No. 82 at 6 & 7, about the search it did is not applicable.

O:\ORDERS\19-2724-EFM-75.docx

not relevant to any claim or defense,"[12] its objections are overruled.  As the court warned

in its last discovery order, such boilerplate objections are "tantamount to not making an

objection at all."[13]   Moreover, FCA does not offer support for any such objection in its

response to the motion to compel, offering instead the wholly conclusory argument that

"common sense dictates it would require a massive undertaking [to respond], warranting

the objections."[14]   "[O]bjections initially raised but not supported in the objecting party's

response to the motion to compel are deemed abandoned."[15]

 With its objections to Interrogatory No. 2 overruled, FCA must serve plaintiff its

answer to this interrogatory by **May 28, 2021**.

INTERROGATORY NOS. 3-5

---

[12] ECF. No. 75-1 at 5.

[13] ECF No. 54 at 4, 10 (quoting *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2020 WL 374685, at *4 (D. Kan. Jan. 23, 2020)).

[14] ECF No. 82 at 8.

[15] *Kannaday v. Ball*, 292 F.R.D. 640, 644 (D. Kan. 2013).  *See also* ECF No. 54 at 10 ("FCA's proportionality [objection] is flatly rejected. This was a boilerplate objection without any attempt to address the proportionality factors set out in Fed. R. Civ. P. 26(b)(1)."); *Pipeline Prods., Inc. v. Madison Cos., LLC*, No. 15-4890-KHV, 2018 WL 3055869, at *3 (D. Kan. June 20, 2018) (ruling that party objecting to discovery has "the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome"); *Fish v. Kobach*, Nos. 16-2105-JAR, 15-9300-JAR, 2016 WL 893787, at *1 (D. Kan. March 8, 2016) (ruling that the party lodging an undue-burden objection must support the objection with an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request).

O:\ORDERS\19-2724-EFM-75.docx

In Interrogatory Nos. 3-5, plaintiff requested information about the number of people who purchased vehicles and were provided the Warranty "on or after July 26, 2007,"[16] the number of those who had a warranty claim denied for failure to complete a powertrain inspection within the requisite timeframe,[17] and the number of those who had their warranty coverage codes reset to reflect the that powertrain inspection was not performed.[18]  FCA asserted relevance objections to these interrogatories because the class proposed in plaintiff's amended complaint was limited to purchasers "on or after October

---

[16] Interrogatory No. 3 stated, in relevant part:

Identify the number of people who would be in the following class, if certified:  All persons who purchased and/or leased, in the state of Kansas, a vehicle from Defendant FCA US LLC and were provided a Lifetime Powertrain Limited Warranty on or after July 26, 2007.

ECF No. 75-1 at 6.

[17] Interrogatory No. 4 stated:

Identify the number of people who would be in the potential class identified in Second Interrogatory [3] who had a warranty claim denied because they did not have the periodic powertrain inspection completed during the requisite timeframe.

*Id.* at 7.

[18] Interrogatory No. 5 stated:

Identify the number of people who would be in the potential class identified in Second Interrogatory [3] who had the WCC code 803 or 839 set for their vehicle.

*Id*.

31, 2009."[19]  FCA argues the interrogatories, therefore, are not directed at the class actually

pleaded, but are aimed at a "potential," but unpleaded, earlier class of purchasers.[20]

As discussed in the court's September 23, 2020 order, "At the discovery stage,

relevance is broadly construed.   Any matter that bears on, or that reasonably could lead to

other matter that could bear on, any issue that is or may be in the case will be deemed

relevant."[21]   The court agrees with plaintiff that the information sought in these

interrogatories could bear on the issue of FCA's misconduct (i.e., willfulness) alleged in

the claims as currently pleaded.

The date used in the interrogatories, July 26, 2007, is the date on which FCA's

predecessor, Old Carco LLC, began to issue the Warranty.  FCA was formed and purchased

Old Carco's assets sometime in 2009.  Even accepting FCA's arguments that FCA could

not form an ill intent before it was formed and, further, that it cannot be held liable for any

wrongdoing by Old Carco,[22] the information sought is relevant to other issues in the case.

For example, this information (which FCA does not assert is outside its possession or

---

[19] *Id.* at 6.  October 31, 2009, is the date on which the named plaintiff purchased his pickup and was issued the Warranty.  ECF No. 1-2 at ¶ 12.

[20] ECF No. 82 at 9-10.

[21] ECF No. 54 at 9-10 (quoting *Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016)) (internal modifications omitted).

[22] FCA presents the Sale Order issued by the United States Bankruptcy Court for the Southern District of New York in Old Carco's bankruptcy proceedings, stating that the purchaser (i.e., FCA) would have no liabilities for any claims which existed against Old Carco except those it expressly agreed to assume.  ECF No. 82-6.

O:\ORDERS\19-2724-EFM-75.docx

control) was presumably considered by FCA when it decided to continue offering the

Warranty in the same manner as Old Carco.  Plaintiff could argue that the percentage of

purchasers who have had a warranty claim denied for failure to complete a powertrain

inspection within the requisite time period, coupled with information about what FCA did

with such data (e.g., continued to offer the Warranty), is circumstantial evidence of FCA's

intent (i.e., whether FCA's deception was willful, as alleged by plaintiff).  To be clear, the

court is not sanctioning the repleading of a new potential class,[23] but is simply finding the

underlying information sought relevant to the claims of the potential class as currently

pleaded.

FCA also asserted boilerplate objections that Interrogatories 3-5 were "overly broad,

unduly burdensome, disproportional to the needs of the case . . . [and] vague."[24]  These

boilerplate objections, which FCA did not go on to support in response to the motion to

compel,[25] are overruled for the same reasons set out with respect to Interrogatory No. 2.

---

[23] Plaintiff acknowledges he "has considered" attempting to broaden the class.  ECF No. 89 at 1.  While the undersigned U.S. Magistrate Judge certainly does not presume to know how the presiding U.S. District Judge would decide questions of class certification, the undersigned finds FCA's arguments against expanding the class well-taken.  *See* ECF No. 82 at 10-12.

[24] ECF No. 75-1 at 6-7.

[25] The court recognizes FCA touched on the proportionality analysis in its response brief, arguing "even if it only took FCA US 50 hours to redo the calculations for the broader class, that burden would still far outweigh the benefit of such discovery." ECF No. 82 at 11.  But this conclusory statement, with an unsupported burden estimate, does not adequately address the proportionality factors set out in Fed. R. Civ. P. 26(b)(1).

9

O:\ORDERS\19-2724-EFM-75.docx

With its objections to Interrogatory Nos. 3-5 overruled, FCA must serve plaintiff its answers to these interrogatories by **May 28, 2021**.

IT IS THEREFORE ORDERED that plaintiff's motion to compel interrogatory answers is granted.

Dated May 14, 2021, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

10

O:\ORDERS\19-2724-EFM-75.docx