UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL MARKSBERRY,                    )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )          Case No. 19-2724-EFM
                                       )
FCA US LLC, et. al.,                   )
                                       )
                    Defendants.        )

## **ORDER**

This case arises from plaintiff's purchase of a Dodge Ram pickup truck and defendants' later refusal to fix the truck under a warranty claim. Before the court is plaintiff's motion to sanction defendant FCA US LLC ("FCA"), the truck's manufacturer, for the alleged unpreparedness of its corporate designee and improper objections of its counsel at FCA's deposition (ECF No. 79).[1] Plaintiff asks the court to order FCA to sit for a second deposition and impose additional sanctions. Because the court finds the deponent was unprepared to give testimony on a few noticed topics and because FCA's counsel did assert improper objections that disrupted plaintiff's ability to gather discoverable information, the motion is largely granted.[2]

---

[1] An unredacted version of the motion is filed as ECF No. 84.

[2] Although the court does not agree with plaintiff on every argument asserted in the motion, the court deems a limited follow-up deposition justified.

1

In 2009, plaintiff purchased a model-year 2009 Dodge Ram 1500 pickup truck from defendant Landers McLarty Olathe KS, LLC ("Olathe Dodge"), a local FCA dealer.  The truck came with a Lifetime Powertrain Limited Warranty ("the Warranty") issued by FCA, which covered the costs of all parts and labor needed to repair powertrain components defective in workmanship and materials.  In May 2016, plaintiff brought his truck to Olathe Dodge for repair of the exhaust manifold.  He paid $1,323 for the repair because defendants would not recognize it as covered by the Warranty.  The Warranty had a requirement that coverage would continue only if the truck was subjected to a "powertrain inspection . . . within sixty (60) days of each 5 year anniversary of the in-service date," and plaintiff does not dispute that a powertrain inspection was not timely performed.[3]  Plaintiff instead alleges FCA wrongfully concealed the powertrain-inspection requirement.  He brings claims on behalf of a proposed class of "persons who purchased, in the state of Kansas, a vehicle from [FCA] and were provided a Lifetime Powertrain Limited Warranty on or after October 31, 2009."[4]

On March 3, 2021, plaintiff noticed the Fed. R. Civ. P. 30(b)(6) deposition of FCA and provided a list of 13 deposition topics.[5]  FCA served its objections to the notice and topics on March 9, 2021.  Thereafter, the parties engaged in a number of meet-and-confer

---

[3] ECF No. 48 at 2; *see also* ECF No. 47 at 4.

[4] ECF No. 1-2 at ¶ 44.  Plaintiff's motion to certify the class is due June 11, 2021. *See* ECF No. 78.

[5] ECF No. 61.

discussions, including via three telephone calls and multiple e-mails.[6]  Over the course of

these discussions, plaintiff agreed to modify certain of the deposition topics.[7]   The

deposition of FCA's corporate representative, Christopher M. Edwards, took place on

March 25, 2021.  In the instant motion, plaintiff alleges (1) Edwards was unprepared to

answer questions concerning noticed topics, (2) FCA's counsel improperly made excessive

speaking objections and coached the witness, and (3) FCA's counsel asserted improper

privilege objections.

Rule 30(c) governs pretrial testimony taken by deposition.  It requires that "[t]he

examination and cross-examination of a deponent proceed as they would at trial," with very

limited exceptions.[8]  Although a judge generally is not present at depositions, the rule

clearly contemplates depositions will be conducted in a professional manner, with counsel

---

[6] *See* ECF No. 83-1.

[7] *See* ECF No. 83-3 at 3, 5-6, & 9-10 (plaintiff's March 19, 2021 written "recap of the parties' discussion" noting modifications to various topics to "resolve FCA US LLC's objections"); ECF No. 83-4 at 3 (plaintiff's March 23, 2021 e-mail summarizing counsel's discussion and concluding, "we will not file an amended notice, and will instead let the redlines we sent you last week serve as clarifications and specific identification of the areas about which we intend to inquire").  The court <u>flatly</u> rejects plaintiff's assertion that because the agreed-upon, modified topics were not filed, the originally noticed topics "were the operative topics for the deposition." ECF No. 87 at 3.  Such a result would make good-faith negotiations feckless, and clearly violate the purpose and spirit of the meet-and-confer requirement.  *See* Fed. R. Civ. P. 30(b)(6) ("Before or promptly after the notice of subpoena is served, the serving party and the organization must confer in good faith about the matters for examination.").  The court further rejects plaintiff's far-fetched argument that the parties were unsuccessful in coming to an agreement on modified topics.  This argument is belied by counsels' March 23-24, 2021 e-mail exchange.  ECF No. 83-4.

[8] Fed. R. Civ. P. 30(c)(1).

and parties behaving as they would in open court.  Subsection (2) sets forth the manner in which objections must be presented and preserved.  "An objection must be stated concisely in a nonargumentative manner."[9]  So-called "speaking objections" are not allowed.[10]  The deponent must proceed in his testimony, despite any objection, except in three narrow circumstances: "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."[11]

The District of Kansas Deposition Guidelines ("Deposition Guidelines") augment this rule "and provide ground rules for an integral piece of the modern federal court lawsuit."[12]  In line with Rule 30(c)(2), they forbid long-winded objections that "suggest answers to or otherwise coach the deponent."[13]  In fact, they limit objections to "those involving privilege . . . or some matter that maybe remedied if presented at the time, such as an objection to the form of the question or the responsiveness of the answer."[14]  Finally,

---

[9] Fed. R. Civ. P. 30(c)(2).

[10] *See Cincinnati Ins. Co. v. Serrano*, No. 11-2075-JAR, 2012 WL 28071, at *4 (D. Kan. Jan. 5, 2012) ("The Guidelines support Rules 30 and 32 by highlighting some important concepts. One is to prohibit objections which suggest answers to or otherwise coach the witness, commonly called 'speaking objections.'").

[11] Fed. R. Civ. P. 30(c)(2).

[12] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-md-2785-DDC, 2018 WL 6617105, at *1 (D. Kan. Dec. 14, 2018).

[13] Deposition Guidelines § 5(a).

[14] *Id.*

4

when privilege is asserted, the Deposition Guidelines make clear that "the witness is nevertheless required to answer questions relevant to the existence, extent, or waiver of the privilege/immunity, such as the date of a communication, who made it, to whom it has been disclosed, and its general subject matter."[15] "These Guidelines aren't aspirational," but mandatory.[16]

Where discovery rules are violated, Rule 37(b)(2) provides a vehicle for imposing sanctions. The sanctions permitted run the gamut, from dismissal to the reimbursement of expenses and fees.[17] Rule 30(d)(2) also permits a court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." The court has discretion in determining the appropriate sanction.[18]

The court has read the significant portions of the deposition transcript submitted by the parties,[19] as well as the parties' memoranda, and now will address plaintiff's concerns in turn.

---

[15] *Id.* at 5(b).

[16] *In re EpiPen*, 2018 WL 6617105, at *1.

[17] Fed. R. Civ. P. 37(b)(2).

[18] *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995).

[19] ECF Nos. 83-5 & 84-1.

O:\ORDERS\19-2724-EFM-79.docx

<u>Witness Preparedness to Answer Questions Within the Scope of Noticed Topics</u>

Plaintiff first complains that Edwards, the only witness designated by FCA under Rule 30(b)(6) to answer questions on behalf of the corporation, was inadequately prepared to answer questions on four noticed topics.

When a deposition notice is served on a corporation, Rule 30(b)(6) mandates the corporation designate one or more persons to "testify as to matters known or reasonably available to" the corporation.  The testimony of a Rule 30(b)(6) designee "represents the knowledge of the corporation, not of the individual deponents."[20]  Thus, the corporation "has a duty under Rule 30(b)(6) to provide a witness who is knowledgeable in order to provide 'binding answers on behalf of the corporation.'"[21]  That duty requires the corporation to designate a knowledgeable person or persons "and to prepare them to fully and unevasively answer questions about the designated subject matter."[22]  The designee must "review all matters known or reasonably available to the corporation in preparation

---

[20] *Schneider v. CitiMortgage, Inc.*, No. 13-4094-SAC, 2017 WL 2831083, at *3 (D. Kan. June 29, 2017).

[21] *Id.* (quoting *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999)).

[22] *Id.* at *4 (quoting *Starlight*, 186 F.R.D. at 639). *See also Payless Shoesource Worldwide, Inc. v. Target Corp.*, No. 05-4023-JAR, 2008 WL 973118, at *9 (D. Kan. Apr. 8, 2008) ("With regard to choosing a deponent to speak on behalf of the corporation, companies have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them fully to unevasively answer questions about the designated subject matter.").

for the 30(b)(6) deposition."[23]

"Rule 30(b)(6) sets a high burden of knowledge, but only regarding the noticed topics, no more and no less."[24]  As a result, the court will consider whether Edwards was prepared regarding the noticed topics, as revised, for which plaintiff still seeks further deposition discovery: Topics 2(g), 5, 7, and 11.  The court has conducted a thorough review of Edward's deposition, along with the arguments of the parties. The court is persuaded FCA did not properly prepare Edwards to testify concerning Topics 2(g) and 11.

Plaintiff first complains Edwards could not answer questions about FCA's advertisements of the warranty, including whether any of the advertisements mentioned the powertrain-inspection requirement.  Plaintiff contends such questions fell under Topics 2(g) and 7, which read:

Topic 2(g): Whether, when, and how, the inspection requirement was disclosed to consumers.

Topic 7: Whether, and how, any of FCA US LLC's advertising and marketing of the Lifetime Powertrain Limited Warranty in Kansas *explicitly* mentioned the periodic powertrain inspection requirement.[25]

In answering a question asking how FCA communicated the terms (which would include the inspection requirement) of the Warranty to consumers—a question that clearly

---

[23] *Payless*, 2008 WL 973118, at *9 (quoting *Sprint Comms. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006)).

[24] *Id.* at *10.

[25] ECF No. 83-3 at 10 (emphasis added).

falls under Topic 2(g)—Edwards listed "advertisements" as one of disclosure methods. However, Edwards was unable to answer questions about the "when" and "how" of that disclosure method, such as when the advertisements were used, if the advertisements were on radio or TV or billboard, and if the advertisements were made in Kansas.  The court finds questions regarding the when and how of advertisements that FCA contends disclosed the inspection requirement fall under Topic 2(g), and FCA has a duty to present a designee to answer them.[26]

The court reaches a different conclusion regarding Edwards's testimony falling under Topic 7, which is narrowly focused only on advertisements that *explicitly* mention the inspection requirement.  The court finds Edwards was prepared to answer—and did answer—questions on this topic.  Edwards initially testified he was "not aware" of advertisements of the Warranty "that *specifically* mentioned the inspection requirement,"[27] and he later answered "no" to a question asking whether any of the advertisements for the Warranty "mention explicitly the inspection requirement."[28]

Plaintiff next asserts Edwards was not prepared to answer questions related to FCA's records retention, which fall under Topic 5.  Topic 5 stated:

<u>Topic 5</u>: FCA US LLC's records retention.

---

[26] The court finds, however, that plaintiff's question of whether FCA had a budget for advertising the warranty falls outside the scope of the noticed topics.

[27] ECF No. 84-1 at 62 (emphasis added).

[28] ECF No. 83-5 at 17.

a.  FCA US LLC's record retention policies, including applicable record retention schedules, with respect to the records created concerning the development of the Lifetime Powertrain Limited Warranty and the periodic powertrain inspection requirement;

b.  The means by which FCA US LLC stored and retained records in the following categories: records concerning the development of the Lifetime Powertrain Limited Warranty; records concerning the development of the periodic powertrain inspection requirement; records concerning the mailing of reminder letters to vehicle owners; records concerning the sale of vehicles manufactured by FCA US LLC; and records concerning warranty claims which are denied, including the reason for denial of the warranty claim.[29]

Plaintiff complains that Edwards could not say whether a litigation hold was issued for this case.  Nor could Edwards answer how, when a litigation hold is issued, FCA determines which documents need to be preserved pursuant to the hold.  Plaintiff also objects that Edwards did not answer questions about FCA's records searches for information responsive to discovery.  Plaintiff argues such information "is clearly relevant."[30]  Relevance is not the issue, however.  FCA was only required to prepare its designee on the noticed topics.[31]  This court has recognized, "if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem."[32]

---

[29] ECF No. 83-3 at 10.

[30] ECF No. 84 at 28.  *See also* ECF No. 87 at 7-8 (arguing relevance of record-retention policy where the affirmative defense of laches has been raised).

[31] *See Payless*, 2008 WL 973118, at *10.

[32] *Starlight*, 186 F.R.D. at 639 (citing *King v. Pratt & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995)).

The court finds it a stretch to say that in preparing to be deposed on Topic 5 regarding FCA's retention polices of records related to the Warranty, Edwards must have knowledge about information specific to litigation holds or information about document searches generally done for this case.  In other words, Topic 5 did not put FCA on notice that the deposition would seek information about the litigation hold in this case.  The court notes Edwards was prepared to testify, and did testify, more generally about FCA's document retention policy, such as that most records are maintained for three years.[33]  The court will not compel further testimony on document holds and general document searches.[34]

Under the fourth topic at issue, plaintiff contends Edwards was not prepared to answer questions about Topic 11.  Topic 11 read:

Topic 11: FCA US LLC's communications with Plaintiff concerning the Lifetime Powertrain Limited Warranty and/or Plaintiff's warranty claim at issue in this litigation.[35]

It's undisputed that the only communication FCA had with plaintiff was a call plaintiff made to FCA's customer-care center.  As such, it is reasonable to expect Edwards to have "fully prepared" to answer questions about Topic 11 by gathering all the

---

[33] *See* ECF No. 84-1 at 82.

[34] To the extent Edwards testified that his answer to a question falling under *a different noticed topic* (such as Topic 2(b) addressing how the five-year-inspection-period was chosen)) was *based on* FCA's document searches, Edwards *will be* required to explain those searches where FCA's privilege objection is overruled.  *See infra* pages 24-25.

[35] ECF No. 83-3 at 10.

information known to FCA about that call.  The deposition transcript suggests, however, that Edwards limited his preparation to reviewing the customer-care agent's notes about the call.  Edwards professed no knowledge beyond what he read in the notes.  He did not know, for example, whether FCA contends plaintiff requested reimbursement of the money he paid for his truck repair or whether the call (or any call to customer care) was recorded. FCA surely has corporate knowledge to answer these two questions, and the court will order FCA to produce a 30(b)(6) deponent regarding this topic.

Because Edwards was not prepared to testify on behalf of FCA concerning Topics 2(g) and 11, FCA will be required to present a deponent to sit for a follow-up deposition on these topics.

Speaking Objections/Coaching the Witness

Plaintiff next complains that during the 30(b)(6) deposition, FCA's counsel made numerous speaking objections that overtly coached Edwards.  The allegedly improper speaking objections fall under four umbrellas.

First, plaintiff argues that counsel's objection to questions as "outside the scope" of noticed deposition topics was an improper speaking objection.  Plaintiff cites Deposition Guidelines § 5(a)'s requirement that objections must be "concise" and "not suggest answers to or otherwise coach the deponent" and further its directive that the only appropriate objections are "those involving privilege . . . or some matter that may be

remedied if presented at the time."  FCA responds that, "[i]n this District, 'outside the scope' objections during a corporate representative deposition are entirely proper."[36]

The only case cited by the parties on this issue is *Payless Shoesource Worldwide, Inc. v. Target Corp.*, in which the court noted that *when* an "outside the scope" objection is made to a question, the witness must nevertheless answer the question because Fed. R. Civ. P. 26(b)—not the deposition notice—defines the scope of discovery.[37]  Although *Payless* may give an implicit nod to allowing scope objections,[38] the court did not directly consider the question.  Moreover, the undersigned's research has found no other binding case addressing whether objections to questions as "outside the scope" are inappropriate speaking objections under the Deposition Guidelines.

The court finds that when FCA's counsel asserted objections to questions as outside the scope of the deposition notice, he did so in a "concise" manner that did nothing to "coach the deponent."[39]  In almost every instance cited by plaintiff, FCA counsel simply

---

[36] ECF No. 83 at 21.

[37] 2008 WL 973118, at *9. *See also Emps. Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, No. CV 2005-0620, 2006 WL 1120632, at *1 (E.D.N.Y. Apr. 26, 2006) ("[C]ourts have recognized that when a deponent is produced pursuant to Fed. R. Civ. P. 30(b)(6), the scope of questioning at the deposition is not defined by the notice of deposition—instead, Fed. R. Civ. P. 26(b)(1) defines the scope of discovery unless otherwise ordered by the court.")

[38] *See also Thermal Sols., Inc. v. Imura Int'l U.S.A., Inc*., No. 08-2220-JWL, 2010 WL 11431539, at *3 (D. Kan. Apr. 13, 2010) (noting, "counsel interposed objections to these questions as beyond the scope of [the 30(b)(6)] deposition notice," but not considering the appropriateness of such objections).

[39] Deposition Guidelines § 5(a).

stated, "Object to the form, also outside the scope."[40]   The court finds this nonverbose objection was appropriate to preserve for the record that Edwards was answering the question in his capacity as an individual, not on behalf of FCA.[41]   Plaintiff's motion is denied in this respect.[42]

Second, plaintiff argues that objections instructing the witness he could answer "if he knows" were improper coaching to signal the witness to refuse to answer or to answer that he does not know.  Plaintiff's argument is supported by caselaw in this district.  In *Cincinnati Ins. Co. v. Serrano*, U.S. Magistrate Judge Kenneth G. Gale ruled, "Instructions to a witness that they may answer a question 'if they know' or 'if they understand the question' are raw, unmitigated coaching, and are *never* appropriate."[43]   Counsel's

---

[40] *See, e.g.,* ECF No. 84-1 at 55.

[41] *See Meyer Corp. U.S. v. Alfay Designs, Inc.,* No. CV 2010 3647, 2012 WL 3536987, at *5 (E.D.N.Y. Aug. 13, 2012) ("Although plaintiff is permitted to object to a question as beyond the scope of the notice in order to preserve for the record that the deponent is answering such a question in an individual, not corporate, capacity, many of Mr. Dickie's objections in this regard were excessively wordy. . . . In the future, Mr. Dickie must state his objections to scope simply by stating 'Objection, beyond the scope of the deposition notice.'").

[42] This ruling does not apply to the additional instruction that Edward could answer "if he knows," which FCA's counsel occasionally added to the end of his scope objection. This additional instruction is discussed below.

[43] No. 11-2075-JAR, 2012 WL 28071, at *5 (D. Kan. Jan. 5, 2012) (emphasis in original).

instructions in this regard clearly were inappropriate.[44]

Third, plaintiff takes issue with FCA's counsel's speaking objections, on at least three occasions, that questions "called for a legal conclusion."  Generally, *concise* objections to form that go on to state in a *few* words the nature of the form objection (e.g., "compound" or "leading") do not run afoul of the Deposition Guidelines or Rule 30(c)(2).[45] They are nonsuggestive and efficiently alert the questioner to the alleged defect such that the questioner is given the opportunity to cure the objection.[46]  Thus, if FCA's counsel had simply stated, "Objection to form - calls for a legal conclusion," the court would uphold the challenged objections.[47]  Unfortunately, however, counsel's objections were much

---

[44] This ruling does not apply to instances in which the "if you know" instruction was coupled with an assertion of privilege.  Objections on privilege grounds will be addressed below.

[45] *Serrano*, 2012 WL 28071, at *5 ("Although the Guidelines talk about objections based on the 'form' of the question (or responsiveness of the answer), this does not mean that an objection may not briefly specify the nature of the form objection (e.g. 'compound,' 'leading,' 'assumes facts not in evidence').").

[46] *See, e.g., Rakes v. Life Invs. Ins. Co. of Am.,* No. C06-0099, 2008 WL 429060, at *5 (N.D. Iowa Feb. 14, 2008) ("[T]he general practice in Iowa permits an objector to state in a few words the manner in which the question is defective as to form (e.g., compound, vague as to time, misstates the record, etc.). This process alerts the questioner to the alleged defect, and affords an opportunity to cure the objection.").

[47] *See P.S. v. Farm, Inc*., No. 07-CV-2210-JWL, 2009 WL 483236, at *11 (D. Kan. Feb. 24, 2009) (noting "any objections based on attorney-client privilege or calling for a legal conclusion can certainly be raised during the Rule 30(b)(6) deposition").  To the extent the case cited by plaintiff, *AKH Co., Inc. v. Universal Underwriters Ins. Co*., No. 13-2003-JAR, 2016 WL 141629, at *4 n.6 (D. Kan. Jan. 12, 2016), included "legal conclusion" in its footnoted list of "improper relevance or foundation objections," the undersigned judge respectfully disagrees with that conclusion.

14

more verbose and took the form of speaking objections.[48]   They therefore were inappropriate and are overruled.

Finally, on three occasions, FCA's counsel objected that a question was "vague." The court recognizes that in *Serrano*, Judge Gale ruled that "vagueness" objections are almost always improper because "they express a concern that the witness may not understand the question . . . [but o]nly the witness knows whether she understands a question."[49]  Judge Gale concluded, "to avoid a suggestive speaking objection," objections based on vagueness "should be limited to an objection 'to form.'"[50]  The undersigned respectfully disagrees with Judge Gale and reaches a different conclusion.  The undersigned finds a concise objection that a question is "vague" is of the same ilk as a concise objection that a question "calls for a legal conclusion."  When not coupled with further suggestive speech, both objections are an efficient means of alerting the questioner as to the nature of the form objection asserted, such that the questioner may revise the

---

[48] *See, e.g.,* ECF No. 84-1 at 38 ("Q: When you say 'I,' are you speaking as Chris Edwards or as FCA U.S. LLC?  [FCA's Counsel:] Again, we've gone over this numerous times.  You're trying to draw legal distinction.  I believe that you've got the witness confused in terms of your prior questions in terms of what it means to be a corporate representative and those types of things that have legal implications.  I think your question is improper. You've asked that question multiple times.  And I'm also going to again caution the witness not to reveal any communications that he's had with his counsel inside or outside the company.").

[49] *Serrano.,* 2012 WL 28071, at *5.

[50] *Id.*

question and allow the deposition to move forward.[51]  Thus, on the two occasions when FCA's counsel made concise vagueness objections,[52] the objections are upheld.  But in the instance where the vagueness objection was coupled with a 53-word speaking objection,[53] it is overruled.

Privilege Objections

Finally, plaintiff argues FCA's counsel made repeated, improper objections on the basis of attorney-client privilege.  The court agrees.

Caselaw in this district provides a wealth of guidance as to what is—and is not— protected by the attorney-client privilege.  First, it's important to note that "[n]ot every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice."[54]  "Legal advice must predominate for the communication to be protected."[55]  There is a distinction between

---

[51] *See Nebeker v. Nat'l Auto Plaza,* 643 F. App'x 817, 826 (10th Cir. 2016) (upholding denial of motion for sanctions based on multiple objections that questions were "vague and ambiguous").

[52] ECF No. 84 at 12 & ECF No. 84-1 at 24.

[53] ECF No. 84-1 at 17.

[54] *New Jersey v. Sprint Corp*., 258 F.R.D. 421, 443 (D. Kan. 2009) (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 175 F.R.D. 321, 327 (D. Kan. 1997)); *see also Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM, 2020 WL 1643679, at *3 (D. Kan. Apr. 2, 2020) ("To be privileged, communications must be confidential and involve requesting or giving legal advice.").

[55] *New Jersey v. Sprint*, 258 F.R.D. at 444; *Lawson,* 2020 WL 1643679, at *3 ("Legal advice must predominate; attorney-client privilege does not attach if legal advice is incidental to business advice.").

a conference with counsel and a conference at which counsel is present; the mere presence of counsel at a meeting does not make all communications during the meeting privileged.[56] Further, the subject matter of meetings with an attorney, the persons present, the location of the meetings, or the persons arranging the meetings are also not protected by the privilege.[57]

Second, it is clear that "[u]nderlying facts are not protected by the privilege."[58] "[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged."[59] Nor are "general topics of attorney-client discussions" or ultimate "legal conclusions" of counsel protected.[60]

Finally, as stated in the Deposition Guidelines, "[w]hen privilege or work product immunity is asserted, the witness is nevertheless required to answer questions relevant to the existence, extent, or waiver of the privilege/immunity, such as the date of a

---

[56] *New Jersey v. Sprint*, 258 F.R.D. at 444.

[57] *Id.*

[58] *In re CCA Recordings 2255 Litig.*, 337 F.R.D. 310, 326 (D. Kan. 2020) (quoting *Sprint Commc'ns Co. v. Comcast Cable Commc'ns, LLC,* Nos. 11-2685, 11-2686, 2014 WL 545544, at *4 (D. Kan. Feb. 11, 2014)); *Lawson*, 2020 WL 1643679, at *3 ("[U]nderlying facts do not become privileged merely because they are conveyed between attorney and client.").

[59] *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010).

[60] *Sprint v. Comcast,* 2014 WL 545544, at *6.

communication, who made it, to whom it has been disclosed, and its general subject matter."[61]

Applying these standards, the court finds almost every assertion of attorney-client privilege made by FCA's counsel was overbroad. FCA defends its counsel's privilege assertions by arguing that the "vast majority" were to questions that "sought to elicit testimony about: what 'searches' or 'investigations' FCA US's ***counsel*** conducted for the case; the deponent's communications with counsel to prepare for the deposition; conversations FCA US's ***attorneys*** had with other representatives of the company about issues in the case; when FCA US began preparing for 'any litigation' related to the Lifetime Powertrain Limited Warranty; and, details about litigation hold notices."[62] Taking FCA at its word, the court overrules these privilege objections. Let's take these categories of questions one by one:

1. Testimony about the investigations and document searches performed by FCA's counsel: not privileged. Facts concerning the acts of counsel in a case are not privileged.[63]

---

[61] Deposition Guidelines § 5(b).

[62] ECF No. 83 at 17 (emphasis in original).

[63] *Sprint Commc'ns Co. L.P. v. Time Warner Cable, Inc.*, No. 11-2686-JWL, 2016 WL 7105932, at *5 (D. Kan. Dec. 6, 2016) ("[T]the statements regarding [counsel's] participation in the joint investigation . . . merely reveal facts, topics of discussion, and acts of counsel, none of which are privileged."); *In re Universal Serv. Fund Tel. Billing Practices Litig.,* 232 F.R.D. 669, 675 (D. Kan. 2005) ("Acts or services performed by an attorney during the course of the representation are not within the privilege because they are not communications.").

Thus, for example, Edwards's refusals to answer on privilege grounds questions about "when" FCA conducted an investigation (concerning the individuals responsible for setting the powertrain-inspection requirement) and "when" Edwards was told about the investigation[64] were clearly improper. These objections are addressed further below.

2. Edwards's communications with counsel to prepare for the deposition: only privileged as to legal advice sought or given; not privileged as to the acts of counsel. "Not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice."[65] Thus, for example, counsel's privilege objection to the question "Did your attorney provide you with all of the documents that were part of the discovery phase of this case [to prepare for this deposition]?" was improper. In another example, Edwards was asked, "What did FCA U.S. LLC do to prepare you for today's deposition."[66] This court has ruled the "identification of documents a witness reviews at the direction of counsel" in preparation for a deposition "is not privileged information."[67]

3. Conversations FCA's attorneys had with other representatives of the company about issues in the case: only privileged to the extent the conversations involved the giving or

---

[64] ECF No. 84-1 at 75-77.

[65] *New Jersey v. Sprint*, 258 F.R.D. at 443 (quoting *Burton*, 175 F.R.D. at 327; *see also Lawson*, 2020 WL 1643679, at *3 ("To be privileged, communications must be confidential and involve requesting or giving legal advice.").

[66] ECF No. 84-1 at 10.

[67] *New Jersey v. Sprint,* 258 F.R.D. at 436.

19

seeking of legal advice. The simple fact that an attorney was involved in the conversation was not enough. Counsel for plaintiff should have been allowed to further question Edwards to determine whether FCA's assertions of attorney-client privilege were valid.

4. Testimony about "when" FCA began preparing for litigation related to the Warranty: not privileged. This asks for a fact, and "[a] fact is discoverable regardless of how a deponent came to possess it."[68] The assertion by FCA's counsel that "if that date comes from a lawyer and that date is communicated to someone else in the company, that is an attorney-client privileged communication unless this witness somehow knows that date outside of those communications,"[69] is simply incorrect.

5. Details about litigation-hold notices: privilege depends on what "details" were sought. Here, FCA's counsel's privilege objection to, and Edwards's subsequent refusal to answer, a question asking the "subject matter of the case for which the litigation hold notice you reference was issued"[70] were errant.

In addition, privilege objections to questions asking Edwards about his understanding of "the subject matter of this case" and "the claims that the plaintiff is bringing in this lawsuit,"[71]because such understanding came from conversations with

---

[68] *Miller v. NEP Grp., Inc.*, No. 15-CV-9701-JAR, 2016 WL 6395205, at *9 (D. Kan. Oct. 28, 2016).

[69] ECF No. 84-1 at 42-43.

[70] *Id.* at 32-36.

[71] *Id.* at 9-10.

counsel, were overbroad.   As noted above, the "general topics of attorney-client discussions" and ultimate "legal conclusions" of counsel are not protected.[72]

FCA's brief delves into a discussion about the appropriateness of plaintiff's questions at the deposition regarding "searches" FCA performed for responsive discovery, including whether FCA attempted to identify employees who were with the company at the time the Warranty was developed.   FCA argues such "discovery on discovery" is "aimed at getting the deponent to reveal communications with counsel relating to FCA US's discovery efforts."   The court rejects the unsupported suggestion that a *blanket* privilege ban applies to questions about FCA's searches.   Rather, the court has examined each particular instance of privilege asserted in response to questions about FCA's searches for discovery and finds none were appropriate.[73]   This is generally how the questions and objections went:

[Plaintiff's counsel:] Why did you settle on five years being the kind of goldilocks zone of burden as opposed to three years, ten years, or even yearly?

A. As I understand it, during the discovery we could not find any documents or studies on that topic.

. . .

[Plaintiff's counsel:] Where did FCA U.S. LLC look to try and determine if there were any documents or studies on the relative burden to consumers for the interval for this powertrain inspection?

---

[72] *Sprint v. Comcast*, 2014 WL 545544, at *6.

[73] The court finds no merit in FCA's assertion that a footnote in the court's September 23, 2020 order rejecting an unsupported argument that FCA had a duty to discuss its searches for documents responsive to a written document request, ECF No. 54 at 8 n.28, somehow controls here.

21

[FCA's counsel:] Object to the form and I would also just caution the witness not to divulge conversations with counsel.

. . .

A. Are you asking for specific locations?

[Plaintiff's counsel:] Wherever FCA U.S. LLC looked.

[FCA's counsel:] Same objection.

A. It's my understanding there was a thorough search performed for those documents.

[Plaintiff's counsel:] What did that thorough search entail?

[FCA's counsel:] Same objection.  Again, I would just caution the witness not to divulge substantive communication with counsel.

A. I do not know.

[Plaintiff's counsel:] How do you know that it was a thorough inspection?

[FCA's counsel:] Same objection.

A. I cannot answer outside of conversation with counsel.

[Plaintiff's counsel:] Who performed this search?

[FCA's counsel:] Same objection.

A. I do not know.

[Plaintiff's counsel:] Who told you that the search was thorough?

[FCA's counsel:] Same objection. Again, caution the witness not to reveal communications with counsel in-house or out-house, inside counsel or outside counsel.

A. I cannot answer that outside of conversation with counsel.

22

[Plaintiff's counsel:] Sitting here today you do not know where was searched for these documents, you do not know who performed the search. How do you know, then, that the search was thorough?

[FCA's counsel:] Same objections and also getting outside the scope of the deposition as noticed.

A. Can you repeat that question, please?

[Plaintiff's counsel:] If you don't know who performed the search and where they looked, how do you know that it is accurate to say that a thorough search was performed?

[FCA's counsel:] Same objections. Again, I'll just caution the witness not to reveal substantive communications with counsel.

A. I cannot answer that question.

[Plaintiff's counsel:] Why can you not answer that question?

[FCA's counsel:] Same objections.

A. Attorney-client privilege.

. . .

[Plaintiff's counsel:] When was that investigation [for the individual responsible for setting the powertrain-inspection interval at five years] performed?

[FCA's counsel:] Again, same caution to the witness to not reveal the substance of attorney-client communications.

A. I do not know outside of counsel.

. . .

[Plaintiff's counsel:]  Do you know who performed the investigation that we've been discussing?

[FCA's counsel:] Object to the form and I'm also going to caution the witness to not disclose the substance of attorney-client communications.

A. I cannot answer that question.

[Plaintiff's counsel:] Why are you unable to answer that question?

[FCA's counsel:]: Same objections.

A. Attorney-client privilege.

[Plaintiff's counsel:] When were you told who performed the investigation concerning the individual or individuals responsible for setting the powertrain inspection interval at five years?

[FCA's counsel:] Chris, don't answer that question on the basis of privilege.
. . .

[Plaintiff's counsel:] The question was when were you told who had performed the investigation to determine who was involved in the decision to set the powertrain inspection interval at five years.

[FCA's counsel:] Yes. I'm going to object because, again, the question is trying to seek information about attorney-client privileged communication, so I will instruct the witness not to answer.

[Plaintiff's counsel:] Mr. Edwards, are you willing to answer that question?

A. No.[74]

In this series of questions, plaintiff attempted to learn about FCA's search for information responsive to discovery about FCA's decision to implement the five-year-inspection requirement that was necessary to maintain the Warranty.  These questions spoke specifically to *when* FCA's search was performed, *what* the search entailed, and *who* at FCA performed the search.  Thus, they asked for facts.  Plaintiff's counsel did not ask Edwards to disclose the substance of any communications he may have had with FCA's

---

[74] ECF No. 84-1 at 67-77.

counsel.  As the court discussed above, underlying facts are not privileged, even if they were conveyed to the witness by the attorney.  Thus, the privilege objections and instructions not to answer questions were an improper and inaccurate assertion of the attorney-client privilege.[75]

Although the privilege objections are overruled, the court notes its ruling above that *general* questions about FCA's searches for relevant discovery are beyond the scope of the deposition topics noticed.[76]   In the deposition testimony set out here, FCA's counsel often coupled his privilege objection with a scope objection.[77]   In these instances, the court also overrules the scope objections because the questions were not simply general questions about discovery searches.  Rather, they followed plaintiff's questions to Edwards about FCA's decision to set the powertrain-inspection requirement at five years—falling under noticed Topic 2.  Edwards essentially responded, "I don't know," and that he "understood" FCA's searches for information on this topic turned up nothing.  Because, as set out above, a corporate party has a duty to prepare its Rule 30(b)(6) designee to give complete and

---

[75] *See Miller*, 2016 WL 6395205, at *8–9.

[76] See *supra* 10 and n.32.

[77] Counsel only objected once specifically using the word "scope," but earlier in the deposition, counsel reached an agreement that FCA's objections to "form" would preserve its objections on scope.  ECF No. 84-1 at 31 ("If you want to tell me that an objection to form, as to every time I make an objection to form that that covers scope and that that objection is preserved, I'm happy to use the word form instead of scope. But I want a clear understanding on the record that if I object to form, that's an objection to the scope of your question that it's outside the deposition topic and that this witness is not testifying on behalf of FCA U.S. LLC and is testifying in his individual capacity.").

binding answers on behalf of the corporation,[78] when the designee is unable to answer a question on a noticed topic, the court finds the questioning party may probe into the adequacy of those preparations.  Here, Edwards chose to rely on searches performed by someone else (apparently, counsel) and could not answer questions based on the results of those searches.  Plaintiff thus was within his right to probe into the thoroughness of the searches and test the strength of FCA's preparation.

Finally, FCA argues such questions violate the District of Kansas ESI Guidelines, which state, "routine discovery" concerning "the preservation and collection efforts of another party" is "strongly discouraged."[79]  However, the quoted ESI Guideline goes on to state, "deponents who provide testimony on the merits are not exempt from answering questions concerning the preservation and collection of their documents, ESI, and tangible things."[80]  Considering this sentence, the court does not find the questions asked by plaintiff's counsel to be objectionable.

Sanctions

The court must now determine the appropriate sanction for FCA's violations. "Looking the other way isn't an option."[81]  "Long ago, our court established its commitment to enforce the [Deposition] Guidelines, imposing significant sanctions against

---

[78] *Sprint v. Comcast,* 2015 WL 11122120, at *3.

[79] ESI Guideline ¶ 25.

[80] *Id.*

[81] *In re EpiPen,* 2018 WL 6617105, at *3.

26

those who violate them."[82]  Although the court has found the deposition tactics of FCA's counsel inappropriate and mistaken at times, they do not rise to a level warranting oppressive sanctions.  The court finds it appropriate to sanction FCA as follows.  FCA shall designate and prepare a witness under Rule 30(b)(6) to offer further testimony on the topics discussed herein.  This follow-up deposition will be limited to two hours, and FCA's counsel is ordered to conform his objections to the rulings herein.  FCA shall reimburse plaintiff for 100% of his costs associated with the second deposition, including the court reporter, plaintiff's counsel's fees for attending (but nor preparing for) the deposition, and the costs associated with ordering an expedited transcript.

IT IS THEREFORE ORDERED:

1.  Plaintiff's motion to compel 30(b)(6) Testimony (ECF No. 79) is granted in part and denied in part.

2.    FCA shall sit for a follow-up deposition, limited to two hours, under the terms discussed above.  The parties shall meet and confer regarding a mutually convenient time within the next ten days to reconvene this deposition.

Dated May 26, 2021, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[82] *Id.* (citing cases).