# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL MARKSBERRY, individually
and on behalf of a class of similarly situated
individuals,

       *Plaintiff,*

 vs.

FCA US LLC f/k/a CHRYSLER GROUP
LLC,

       *Defendant.*

Case No. 19-2724-EFM-JPO

## MEMORANDUM AND ORDER

A $1,323.53 repair to Plaintiff Michael Marksberry's vehicle has turned into almost four years of litigation.  Plaintiff asserts four claims against Defendant FCA US LLC ("Chrysler"), including (1) a violation of the Kansas Consumer Protection Act ("KCPA"), (2) a violation of the Magnuson-Moss Warranty Act ("MMWA") for breach of express warranty, (3) a breach of an implied warranty of merchantability, and (4) a request for injunctive relief.  Defendant has filed a Motion for Summary Judgment (Doc. 90).  For the reasons stated in more detail below, the Court grants Defendant's motion.

## I.    Factual and Procedural Background

Plaintiff purchased a model-year 2009 Dodge Ram 1500 truck from Defendant Landers McLarty Olathe KS, LLC ("Olathe Dodge") on October 31, 2009.[1]  Plaintiff negotiated a price below the manufacturer's suggested retail price, but he does not know the actual price he paid for it.  The truck came with a Lifetime Powertrain Limited Warranty ("Warranty") which covered the cost of all parts and labor needed to repair a powertrain component that was defective in workmanship and materials.

There were multiple advertisements related to the Warranty.  One print advertisement stated that the Warranty "lasts for as long as you own your vehicle," and that "our powertrain warranty is always there to keep you working."  Every print advertisement contained language stating either "See dealer for a copy of Limited Warranty details" or "See dealer for a copy of Lifetime Powertrain Limited Warranty details."  The window sticker for Plaintiff's truck included the following language:

> Warranty Coverage
> Lifetime Powertrain Limited Warranty.
> 3-year or 36,000-mile Basic Limited Warranty.
> 3-year or 36,000-mile 24-hour towing assistance.
> Certain restrictions apply.  Ask Dealer for a copy of the limited warranties or see your owner's manual for details.

Plaintiff did not ask for a copy of his truck's written warranties before his purchase. Plaintiff does not remember if he had conversations about the truck's warranties before he purchased his truck or what he was told while purchasing his truck.  Plaintiff states that he received

---

[1] Olathe Dodge is no longer in the lawsuit as Plaintiff and Olathe Dodge entered into a settlement agreement, and the parties filed a stipulation of dismissal.  Doc. 147.

a copy of the truck's warranty booklet which set forth the terms of the Warranty at the time of his

purchase.  The warranty booklet was left in the glove box or console.

The warranty booklet for Plaintiff's truck included the following language:

**1. Your Legal Rights Under These Limited Warranties**

The warranties contained in this booklet are the only express warranties Chrysler
Motors LLC ("Chrysler") makes for your truck.  **These warranties give you
specific legal rights.  You may also have other rights that vary from state to
state.**  For example, you may have some implied warranties, depending on the state
where your truck was sold or is registered.
These implied warranties are limited, to the extent allowed by law, to the time
periods covered by the express written warranties contained in this booklet.
. . .

**2.4.  Lifetime Powertrain Limited Warranty**

. . .

**G. Inspections**

In order to maintain the Lifetime Powertrain Limited Warranty, the person or entity
covered by this Powertrain Limited Warranty must have a powertrain inspection
performed by an authorized Chrysler, Dodge, or Jeep dealer once every 5 years.
This inspection will be performed at no charge.  The inspection must be made
within sixty (60) days of each 5 year anniversary of the in-service date of the
vehicle.  You must have the inspection performed to continue this coverage.
For your convenience, powertrain inspection logs have been provided.  You should
use these logs to keep track of each 5 year powertrain inspection interval.

The warranty booklet included three full pages of logs and advised that these logs should

be used to track and record each five-year inspection required by the Warranty.

Plaintiff's 120-day window to obtain a powertrain inspection was August 31, 2014, through

December 31, 2014.  During this time, Plaintiff brought the truck to an FCA-authorized dealership

and had maintenance performed.  The powertrain inspection required by the Warranty was not

performed on Plaintiff's truck within 60 days of the 5-year anniversary of his purchase date.

Because a powertrain inspection was not completed on Plaintiff's truck, the Warranty expired on or about January 1, 2015.

In or around April 2016, Plaintiff heard a "ticking noise" coming from the engine of his truck.  The engine "ticking noise" Plaintiff heard had no effect on the truck's operation.  Plaintiff took his truck to Olathe Dodge on May 10, 2016, and he reported that the engine had a "ticking noise."  On this same date, Olathe Dodge diagnosed the engine "ticking noise" in Plaintiff's truck as the result of two broken exhaust manifold bolts and replaced them.  Manifold bolts are under the component parts covered by the Warranty.  Plaintiff asked for the repair to be covered by the Warranty, but he was told that it had expired.  At the time of the repair, the truck had less than 56,000 miles.  Plaintiff paid $1,323.53 for the May 10 repair.

Plaintiff used his truck as his primary vehicle and method of transportation since purchasing in in October 2009.  As of the date of Plaintiff's deposition on February 28, 2021, Plaintiff had driven his truck for more than 11 years and 80,000 miles.  In the more than eleven years since he purchased it, Plaintiff's truck has met his transportation needs.

On November 16, 2018, Plaintiff filed a Petition and Amended Petition in state court. Defendants removed the case on November 25, 2019.  The parties have gone through several rounds of motions.  Defendant has now filed a motion for summary judgment on the remaining claims: (1) a KCPA violation, (2) a MMWA violation based on a breach of express warranty, (3) a breach of implied warranty of merchantability, and (4) a request for injunctive relief under the KCPA.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3]  The movant bears the initial burden of proof and must show the lack of evidence on the nonmovant's claim.[4]  If the movant carries its initial burden, the nonmovant may not simply rest on its pleadings but must instead set forth specific facts showing a genuine issue for trial as to those matters for which it carries the burden of proof.[5]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits; conclusory allegations alone cannot survive a motion for summary judgment.[6]  The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[7]

## III.     Analysis

Plaintiff asserts four claims: (1) violation of the KCPA, (2) violation of the MMWA based on a breach of express warranty, (3) breach of an implied warranty of merchantability, and (4) injunctive relief under the KCPA.  The Court will discuss each in turn.

---

[2] Fed. R. Civ. P. 56(a).

[3] *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citations omitted).

[4] *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citations omitted).

[5] *Id.* (citing *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

A.      **KCPA Claim**

"The KCPA provides that an 'aggrieved consumer' may maintain a private right of action against a supplier if: (1) the supplier willfully failed to state a material fact; or (2) the supplier willfully failed to state, concealed, suppressed, or omitted a material fact."[8]   K.S.A. § 50-626(a) provides that "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction."   Relevant to the facts in this case, a deceptive act is defined as "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact" or "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact."[9]

Defendant contends that Plaintiff's KCPA claim fails because Plaintiff cannot produce evidence of any deceptive conduct, causation, or willfulness.   Plaintiff argues that Defendant made false representations concerning the Warranty, its representations regarding the Warranty were ambiguous, and that Defendant concealed the inspection requirement.   In addition, Plaintiff asserts that there is evidence of causation and that Defendant's conduct was intentional and willful.

1.      *Deceptive Conduct*

Defendant first argues that Plaintiff cannot show any deceptive conduct.   Plaintiff asserts that Defendant's advertisements were deceptive because Defendant made false representations. Specifically, Plaintiff asserts that Defendant should not have advertised its Warranty as a lifetime warranty because lifetime warranties do not expire.   Plaintiff contends that Defendant should have instead advertised the Warranty as an extendable warranty.   As one court has noted, however,

---

[8] *Stechschulte v. Jennings*, 297 Kan. 2, 298 P.3d 1083, 1100 (2013) (citing K.S.A. § 50-626(b)(3); K.S.A. § 50-634(a)).

[9] K.S.A. § 50-626(b)(2)-(3).

> the phrase "Lifetime Warranty"—standing alone—communicates almost nothing about the quality, duration, or terms of the warranty. Countless products carry "lifetime" warranties, and yet it seems that no two "lifetime" warranties are the same. Instead, "lifetime" warranties promise different (and sometimes very limited) remedies triggered by different (and sometimes very limited) circumstances. Moreover, "lifetime" warranties last different (and sometimes very limited) periods of time.[10]

In this case, even assuming that lifetime means the lifetime of the powertrain, it does not mean that Defendant engaged in deceptive conduct by advertising it as a lifetime warranty. A warranty, even a lifetime warranty, often has requirements associated with it. Here, that is exactly what occurred. In order for the Warranty to run the lifetime of the powertrain, the person covered by it must obtain a powertrain inspection every five years. Plaintiff did not. Had Plaintiff obtained the inspection, the Warranty would have remained in effect and would have lasted for a "lifetime." The Court finds that the inclusion of the word "lifetime" in the Warranty's name is not deceptive.

In addition, Plaintiff contends that several advertisements are false because they state that the warranty "lasts for as long as you own your vehicle," and that "our powertrain warranty is always there to keep you working." Yet, it is undisputed that the Warranty would last as long as Plaintiff owned his vehicle so long as he complied with the terms of it—to obtain a powertrain inspection every five years. In addition, it is undisputed that every advertisement setting forth the Warranty also included language stating to see a dealer for a copy of the Warranty's details. Plaintiff cannot pick and choose what language to read from the Warranty advertisements. Finally, the sticker on the truck's window that Plaintiff bought stated "Certain restrictions apply. Ask Dealer for a copy of the limited warranties or see your owner's manual for details." Thus, there are no genuine issues of fact as to whether Defendant's advertisements were deceptive. They were

---

[10] *Anderson v. 1399557 Ontario Ltd.*, 2019 WL 5693749, at *11 (D. Minn. 2019).

not because they included information informing consumers that restrictions applied to the Warranty, and they also directed consumers to review the warranty or owner's manual for the details.

2.    *Ambiguity*

Plaintiff also contends that there is ambiguity between the warranty's name and the five-year inspection requirement.[11]  Specifically, Plaintiff contends that "lifetime" means "lifetime." But Plaintiff's argument would require the Court (and consumers) to ignore other words in the warranty—namely the word "limited."   The warranty's specific name is Lifetime Powertrain Limited Warranty.  Thus, the use of the word "limited" as a modifier indicates that there were limitations on the lifetime warranty.  Subject to certain limitations (or requirements), there was a lifetime warranty.  Again, Plaintiff cannot pick and choose what to read from the Warranty advertisements.

Furthermore, Plaintiff contends that consumers would have to make a choice over believing the advertisements and the name of the warranty or the language that was buried in the warranty booklet requiring a powertrain inspection every five years.  The Court disagrees.  Again, the Warranty included the word "limited."  And as Plaintiff concedes here, there was language in the warranty booklet setting forth the requirement of the Warranty to get a powertrain inspection every five years—with multiple pages in the book allowing for the recording of the inspection. Furthermore, the advertisements included language directing consumers to see the dealer or the

---

[11] Plaintiff appears to only take issue with the name of the warranty and does not take issue that there were requirements to keep the warranty.

warranty for details.   Thus, there was no choice—it was a lifetime warranty with certain requirements (that Plaintiff chose not to read).

In addition, as noted above, every advertisement stated to check with the dealer for a copy of the warranty details.   The truck's window sticker on Plaintiff's vehicle stated that certain restrictions apply to the warranties, and to ask the dealer for a copy of the limited warranties or to see the owner's manual for details.   There is no ambiguity or confusion in directing the consumer to check the warranty for specific details.   And there is no ambiguity in the details set forth in the warranty booklet stating that to maintain the Warranty, the person covered by the Warranty must have a powertrain inspection performed once every five years.   Accordingly, there are no questions of fact as to whether Defendant's representations were ambiguous.

            3.       Concealment

Plaintiff also contends that Defendant omitted the five-year inspection requirement from its marketing of the Warranty.   It is undisputed, however, that the advertisements contained language stating either "See dealer for a copy of Limited Warranty details" or "See dealer for a copy of Lifetime Powertrain Limited Warranty details."   Plaintiff complains that none of the advertisements mentioned the inspection requirement, but the mere fact that each advertisement did not set forth all the details or requirements of the Warranty *on the advertisement* does not indicate willful concealment.   The advertisements informed consumers to review the Warranty for full details, and the full details were included in the warranty booklet.

In addition, Plaintiff specifically takes issue with Defendant's contention that it disclosed the inspection requirement in the Warranty booklet because he was not given the Warranty booklet

until after he purchased the truck.[12]  Yet, even if he only obtained the booklet after the purchase of the truck, there is no dispute that the truck's window sticker stated that certain restrictions apply to the warranties, and to ask the dealer for a copy of the limited warranties or to see the owner's manual for details.  In short, Plaintiff cannot place his head in the sand and then argue that Defendant concealed something from him.

     4.    *Willfulness*

Finally, the KCPA requires willfulness.  Both K.S.A. § 50-626(b)(2) and (3) of the KCPA require willful conduct.  The Kansas Supreme Court has found that "the use of 'willful' in the KCPA includes an intent to harm the consumer."[13]  Thus, Plaintiff must present evidence that would present a genuine issue of material fact as to whether Defendant's conduct intended to harm the consumer.  Plaintiff fails to do so because Plaintiff fails to direct the Court to *any* conduct by Defendant intending to harm Plaintiff.[14]  In fact, the evidence demonstrates that the advertisements intended to inform consumers that the Warranty had specific details.

Additionally, Defendant asserts that Plaintiff cannot present any evidence that Defendant knew that Plaintiff purchased the truck without understanding that the Warranty had terms and conditions.  Under the KCPA, a supplier has a duty to disclose only if it "knows that the consumer is entering into a transaction under a mistake about the material fact."[15]  Plaintiff appears to shift the burden on this issue by arguing that Defendant must produce facts that affirmatively show that

---

[12] Construing the facts in Plaintiff's favor, he was given the Warranty booklet at the time of his purchase.

[13] *Unruh v. Purina Mills, LLC*, 289 Kan. 1185, 221 P.3d 1130, 1139 (2009).

[14] As noted above, Plaintiff primarily relies on Defendant's advertising and the name of the Warranty as being deceptive.  But Plaintiff must show *willful* conduct, and Plaintiff does not do so.

[15] *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 613 (D. Kan. 2014).

Defendant had no knowledge.  Specifically, Plaintiff contends that Defendant does not present evidence of what efforts it took to ensure that Plaintiff knew about the terms of the Warranty.  But as noted above in the legal standard for summary judgment, the initial burden of proof lies on the party moving for summary judgment and it must show a lack of evidence on the nonmovant's claim.[16]  Then the nonmovant must set forth specific facts showing a genuine issue for trial as to those matters for which it carries the burden of proof.[17]  Stated simply, Defendant points out that Plaintiff has no evidence demonstrating a genuine issue of material fact as to whether Defendant knew that Plaintiff was entering into the transaction under a mistake about the Warranty.  Plaintiff must now come forward with evidence demonstrating that there is a genuine issue of material fact as to Defendant's knowledge.  Plaintiff fails to do so, and he cannot satisfy his burden by stating that Defendant does not present evidence of the efforts Defendant undertook to understand Plaintiff's knowledge.  Accordingly, Defendant is granted summary judgment on Plaintiff's KCPA claim.

    As to Plaintiff's request for injunctive relief under the KCPA, Defendant contends that Plaintiff's request is not an independent cause of action, and it stands or falls with the KCPA claim. Plaintiff does not address this argument.  Plaintiff requested injunctive relief under the KCPA, specifically K.S.A. § 50-634(c), for the permanent enforcement of the Warranty.  This injunctive relief necessarily relies upon a finding that there was a violation of the KCPA.  Because the Court finds that Defendant is entitled to summary judgment on Plaintiff's underlying KCPA claim,

---

[16] *Kannady*, 590 F.3d at 1169 (citations omitted).

[17] *Id.* (citing *Jenkins*, 81 F.3d at 990).

Defendant is also entitled to summary judgment to Plaintiff's request for injunctive relief under the KCPA.

**B.      MMWA Express Warranty Claim**

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief."[18]  This claim generally "stand[s] or fall[s] with [the] express and implied warranty claims under state law."[19]  Plaintiff argues that Defendant made express warranties via its advertising that its Warranty lasted a lifetime.  Because the Warranty did not last a lifetime, and Plaintiff had to pay for a $1,323.53 repair, Plaintiff contends that Defendant breached the express warranty.

Defendant argues that Plaintiff has never raised this theory of recovery—a breach of warranty created by advertisements—and the Court should reject it outright.  Specifically, Defendant contends that Plaintiff's complaint alleges that Defendant breached the express warranty, and violated the MMWA, by not expressly saying that it was Plaintiff's responsibility to actively request a powertrain inspection.[20]  Defendant is correct that Plaintiff's complaint does not contain Plaintiff's new theory of breach of express warranty.  Thus, Plaintiff cannot bring this new theory, and his breach of express warranty claim fails.

---

[18] 15 U.S.C. § 2310(d)(1).

[19] *Suhr v. Aqua Haven, LLC*, 2013 WL 3778928, at *10 (D. Kan. 2013) (citations omitted).

[20] *See* Complaint, Doc. 1-2, ¶ 73.  Defendant moved for summary judgment on Plaintiff's original theory in its motion for summary judgment, but Plaintiff failed to respond to that argument and instead asserted this new theory.

Although the Court dismisses Plaintiff's newest theory outright, the Court will also briefly address it because this theory fails and is not supported by any evidence.  Under the MMWA, a written warranty means either:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.[21]

At least one court has determined that a flyer advertising that windows "must last a lifetime" and have a "lifetime warranty" did not constitute a "written warranty" under the terms of the MMWA.[22]  Specifically, the District of Minnesota found that the advertisement did not promise a defect-free product, did not "promise a specified level of performance that the windows [would] maintain over a specified period of time," or "promise 'to refund, repair, replace or take other remedial action' in the event that the windows [failed.]"[23]  The court concluded that while the advertisement told the consumer "that some type of warranty *exists*, the flyer is not itself a 'written warranty' under the MMWA."[24]  Here, Plaintiff relies on a similar type of advertisement that makes none of the representations identified in § 2301(6)(A)-(B).  Thus, the advertisements on

---

[21] 15 U.S.C. § 2301(6)(A)-(B).

[22] *Anderson*, 2019 WL 5693749, at *5-6.

[23] *Id.*

[24] *Id.* at *6.

which Plaintiff now attempts to rely upon fail to meet the written warranty requirement of the MMWA.

Finally, Plaintiff fails to present any evidence of a breach.  In *Hall v. Fiat Chrysler America US, LLC*,[25] the Central District of California considered a breach of express warranty claim based on the same Lifetime Powertrain Limited Warranty.  In that case, the plaintiff alleged that his transmission needed to be repaired, and the defendant denied coverage for a transmission repair because he had failed to obtain a powertrain inspection within five years.[26]  The district court dismissed the plaintiff's breach of express warranty claim because it found that the plaintiff failed to allege that the defendant breached its obligations.[27]  Specifically, the court noted that "the Powertrain Warranty very clearly states that it will no longer cover a vehicle that does not receive 'a powertrain inspection performed by an authorized dealer once every 5 years within sixty (60) days of each 5 year anniversary.' "[28]  "[B]ecause Plaintiff failed to service his vehicle within 60 days of its 5-year anniversary, Defendant was no longer required to cover the vehicle under its Powertrain Warranty."[29]  Just recently, the Ninth Circuit Court of Appeals affirmed the Central District of California's dismissal of the breach of express warranty claim.[30]  The Ninth Circuit noted that the plaintiff conceded that he did not obtain the powertrain inspection and thus breached

---

[25] 550 F. Supp. 3d 847 (C.D. Cal. 2021), *aff'd in part and rev'd in part*, 2022 WL 1714291 (9th Cir. 2022).

[26] *Id.* at 850.

[27] *Id.* at 851 (citations omitted).

[28] *Id*. (citing the Powertrain Warranty) (alterations omitted).

[29] *Id*.

[30] 2022 WL 1714291 (9th Cir. 2022).

a condition of the warranty obligations.[31]  The court also noted that the inspection requirement was not ambiguous "in the context of the warranty as a whole"  nor procedurally or substantively unconscionable.[32]  Thus, the Ninth Circuit found that the district court was correct in dismissing the plaintiff's claim for breach of express warranty.[33]

Here, the same circumstances are present.  Plaintiff failed to obtain a powertrain inspection within 60 days of the five-year anniversary, and the Warranty was no longer in effect in April or May 2016 when Plaintiff's manifold bolts were replaced.  Thus, Defendant could not breach the express warranty, and Defendant is entitled to summary judgment on this claim.[34]

## C.   Breach of Implied Warranty of Merchantability

 "An implied warranty of merchantability essentially requires that goods sold by a merchant satisfy basic standards of quality or acceptability."[35]   Pursuant to K.S.A. § 84-2-314(2)(c), a good is merchantable if it is "fit for the ordinary purposes for which such goods are used."  "The seller's obligation under an implied warranty of merchantability depends upon the circumstances of the transaction."[36]  "The Kansas Supreme Court has held that a car's ordinary

---

[31] *Id*. at *1.

[32] *Id.*

[33] *Id.*

[34] To the extent that Plaintiff argues that the powertrain inspection is unenforceable, he provides no law to support his position.  Instead, he simply opines that he believes the inspection requirement is unnecessary and arbitrary because it is redundant to routine maintenance on the truck.  That Plaintiff believes the provision is arbitrary does not change its enforceability or change the uncontroverted evidence that he did not obtain the required powertrain inspection.  And as noted above, the Ninth Circuit recently determined that the powertrain inspection was not substantively unconscionable because the plaintiff had "not shown that requiring the vehicle owner to obtain a free inspection every five years in exchange for lifetime service coverage is substantively unconscionable because it is 'so one-sided as to shock the conscience,' or that it 'imposes harsh or oppressive terms.' "  *Id.* (citing *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1322 (2005)) (alteration omitted).

[35] *Golden v. Den-Mat Corp.*, 47 Kan. App. 2d 450, 276 P.3d 773, 797 (2012) (citation omitted).

[36] *Id.* at 779.

purpose is not limited to its 'major components affecting transportation.' "[37]  To prove a breach of an implied warranty of merchantability, "the buyer must show the goods were defective and the defect existed at the time of the sale."[38]

A breach of implied warranty of merchantability is governed by a four-year statute of limitations.[39]  K.S.A. § 84-2-725(2) provides that

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Defendant argues that Plaintiff's claim is barred by a four-year statute of limitations by relying on the first half of this statute which provides that the breach occurs when delivery is made.  In this case, delivery was made on October 31, 2009.  Plaintiff contends that the statute of limitations does not bar his claim by relying on the second half of the statute and asserting that the Warranty explicitly extended to future performance of the goods.  Thus, he contends that he did not discover the breach until May 2016.

The problem with Plaintiff's approach, however, is that he is relying on the *express* warranty—an explicit statement of future performance—rather than an implied warranty.  As the Tenth Circuit has noted, "implied warranties, by their nature, 'do not explicitly guarantee future

---

[37] *Rasnic v. FCA US, LLC*, 2017 WL 6406880, at *5 (D. Kan. 2017) (citing *Hodges v. Johnson*, 288 Kan. 56, 199 P.3d 1251, 1262 (2009)).

[38] *Nieberding*, 302 F.R.D. at 609 (citing *Hodges*, 199 P.3d at 1258).

[39] *See* K.S.A. § 84-2-725(1) (stating that "[a]n action for breach of any contract for sale must be commenced within four years."); *see also Nieberding*, 302 F.R.D. at 616-17 (noting that when a breach of implied warranty claim is based on economic loss, a four-year statute of limitations is applicable) (citation omitted).

performance.' "[40]   In this case, the four-year statute of limitations started running on October 31, 2009, and Plaintiff did not file suit until 2019, which is six years after the statute of limitations ran. Thus, Plaintiff's claim is barred by the statute of limitations.

Even if Plaintiff brought a timely claim, his claim would fail.  "To demonstrate a breach of the implied warranty of merchantability, a plaintiff must show that the purchased goods were defective, that the defect was present when the goods left the seller's control, and that the defect caused the injury sustained by the plaintiff."[41]   Plaintiff does not identify any evidence showing that a defect was present when the truck was sold.  And the evidence shows that Plaintiff owned his truck for over seven years before having any issues with it.  Accordingly, Defendant is entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 90) is **GRANTED**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 9th day of June, 2022.

*Eric F Melgren*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[40] *Nowell v. Medtronic, Inc.*, 2021 WL 4979300, at *7 (10th Cir. 2021) (considering a breach of implied warranty claim under New Mexico law with an identical statute of limitations as Kansas).

[41] *Hodges*, 288 Kan. 56, 199 P.3d at 1261 (citation omitted).